IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID MATUSIEWICZ, | ) |
| | ) |
| Movant/Defendant, | ) |
| | ) |
| v. | ) Civ. A. No. 11-394-GMS |
| | ) Cr. A. No. 08-69-GMS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent/Plaintiff. | ) |

## MEMORANDUM OPINION

_____

David Matusiewicz. *Pro se* movant.

Jamie M. McCall. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

_____

July 2 , 2014
Wilmington, Delaware

SLEET, United States District Judge

## I.    INTRODUCTION

Movant David Matusiewicz ("Matusiewicz") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 49) The government filed its answer in opposition. (D.I. 64) For the reasons discussed, the court will deny Matusiewicz's § 2255 motion without holding an evidentiary hearing.

## II.    BACKGROUND

In April 2008, Matusiewicz was indicted and charged with one count of bank fraud (count one) and one count of making a false statement on a bank loan application (count two). (D.I. 2; D.I. 3) On July 16, 2009, a federal grand jury returned a First Superseding Indictment, re-charging Matusiewicz with counts one and two, and also charging him with one count of engaging in an illegal monetary transaction (count three) and one count of international parental kidnapping (count four). (D.I. 25; D.I. 26)

On September 3, 2009, Matusiewicz pled guilty to counts one and four of the First Superseding Indictment. (D.I. 29) The offense conduct centered around Matusiewicz's kidnapping of his three minor daughters on or about August 26, 2007, which involved his taking them from the United States to Nicaragua, in contravention of the joint custody order with his ex-wife, Ms. Belford. (D.I. 64 at 2) Matusiewicz told Ms. Belford that he was taking the children on a two-week vacation to Disney World, but instead he took them in a motor home to Central America. Matusiewicz kept the children in Nicaragua until his apprehension in March 2009. *Id.*

To facilitate the kidnapping, Matusiewicz committed bank fraud by forging Ms. Belford's signature on several mortgage documents concerning the former marital home – Ms.

Belford was listed on the deed. (D.I. 64 at 2)  Matusiewicz secured a $249,000 home equity loan as a result of the bank fraud, and then transferred the money to a bank account in New Zealand. Following his arrest, the government, with the help of international legal authorities, was able to secure the return of the $249,000 from the owner of the New Zealand account. *Id*.

On December 10, 2009, the court sentenced Matusiewicz to a total of forty-eight months of imprisonment, representing a term of forty-eight months for count one running concurrently with a term of thirty-six months for count four, followed by five years of supervised release, and $9,674 restitution. (D.I. 43)  Matusciewicz appealed, and the Third Circuit Court of Appeals affirmed his judgment of conviction. *See United States v. Matusiewicz*, 402 F. App'x 723 (3d Cir. 2010).

## III.   DISCUSSION

The court construes Matusiewicz's timely filed § 2255 motion as presenting the following four ineffective assistance of counsel claims:[1] (1) defense counsel failed to file formal motions for a variance or downward departure; (2) defense counsel failed to advise Matusiewicz of "all of the facts and law relevant to his decision to plead guilty" and failed to pursue a "more favorable plea agreement" under Federal Rule of Civil Procedure 11(c)(1)(C); (3) counsel failed to move for suppression of evidence and failed to move for dismissal of the indictment; and (4) counsel represented Matusiewicz while operating under a conflict of interest. The government contends all four grounds for relief should be denied.

Matusiewicz has properly raised his ineffective assistance of counsel allegations in a

---

[1]The court has combined claims one, two, and three of Matusiewicz's initial § 2255 motion into claim one of this opinion. The court has separated claim four of the original § 2255 motion into claims two, three, and four of this opinion. The court has merely re-designated the claims for ease of understanding without altering the substance of Matusiewicz's arguments.

2

§ 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule,

ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard

established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance")

prong of the *Strickland* standard, Matusiewicz must demonstrate that "counsel's representation

fell below an objective standard of reasonableness," with reasonableness being judged under

professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at

688. Under the second ("prejudice") prong of the *Strickland* standard, Matusiewicz must

demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding

would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.

1994). In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by

demonstrating that, but for counsel's error, there is a reasonable probability he would have

insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58

(1985). Notably, a court can choose to address the prejudice prong before the performance

prong, and reject an ineffectiveness claim solely on the ground that the defendant was not

prejudiced. *See Strickland,* 466 U.S. at 668. Finally, although not insurmountable, the

*Strickland* standard is highly demanding and leads to a strong presumption that counsel's

representation was professionally reasonable. *Id.* at 689.

  The court will review Matusiewicz's claims in seriatim.

## A. Claim One: Counsel Provided Ineffective Assistance During Sentencing

  Matusiewicz contends that defense counsel was ineffective for failing to raise the

following arguments in formal motions for a downward departure and/or a variance: (1)

Matusiewicz removed his daughters from the United States because he believed they had been

3

sexually abused; (2) WSFS suffered no actual loss; (3) WSFS was partly responsible for the fraud because its employees improperly notarized the loan documents: and (4) Ms. Belford gave explicit approval for Matusiewicz to refinance the house.

### 1. Sexual abuse claim

Matusiewicz's first contention is that counsel should have formally moved for a variance or a downward departure on the basis that he only abducted his children to protect them from perceived sexual abuse from their mother. He also asserts that counsel should have introduced affidavits or testimony to this effect from his mother or sister because, had such affidavits or testimony been introduced, there was a reasonable probability that the court would have viewed his statements about the sexual abuse as probative of mitigating factors instead of as a self-serving statement.

This argument is unpersuasive. First, counsel's failure to include a sworn affidavit or testimony by Lenore Matusiewicz and Amy Gonzalez regarding the alleged sexual abuse of one of Matusiewicz's daughter did not amount to deficient performance and did not prejudice Matusiewicz. During the entire sentencing proceeding, defense counsel strenuously asserted the sexual abuse issue, as evidenced by arguments set forth in the sealed sentencing memorandum and counsel's objections to the pre-sentencing investigation report ("PSR"). Defense counsel also submitted seventeen character letters in support of Matusiewicz, including a letter from his mother, Lenore Matusiewicz. In the letter, Lenore asserts: (1) one of the children "described molestation"; (2) Ms. Belford threatened to sell Matusiewicz's blonde children for $50,000 apiece; (3) the family feared Ms. Belford was the next Andrea Yates; and (4) Matusiewicz was betrayed by "Delaware state and local police, his lawyers, psychiatrists, Family

4

Court, Commissioner Buckworth and --- most of all--- by his wife, the mother of his children. He mistakenly trusted her to take good care of his children." (D.I. 15, SA-094) Finally, at the sentencing hearing itself, counsel argued that Matusiewicz should receive a more lenient sentence because his motivation for taking the children out of the country was his fear for their safety.

Presumably to support his argument regarding counsel's alleged error, Matusiewicz has provided the court with affidavits from his mother and sister, in which they describe why they believed one of the children had been sexually abused, and that they either would have testified to this effect or would have provided affidavits containing these allegations if counsel had asked. These affidavits, however, do not support Matusiewicz's instant contention, because they do not provide any direct evidence of sexual abuse and because the substantive allegations in the affidavits were presented to the court during the sentencing hearing via counsel's arguments and Lenore's sentencing letter. Moreover, contrary to Matusiewicz's assertion, the basis for the court's sentencing decision was not its doubt regarding the veracity of Matusiewicz's allegation of sexual abuse. Rather, the court relied more heavily on the fact that Matusiewicz failed to report any abuse concerns prior to his arrest in this case and, even if Matusiewicz's fears were considered, his kidnapping of the children was an inappropriate, illegal, and dangerous response. For instance, the court opined:

It is clear that you prepared for months for the kidnapping of your children, and, indeed, that the conduct underlying the bank fraud was a part of that preparation. During those months of preparation, as far as I can tell --- and I have suggested this earlier and no one has answered on your behalf of the question --- you never said a word to the Family Court, Child Protective Services, law enforcement, or anyone else about your concerns, the concerns you now claim to have had for the safety of your children. In fact, I have seen no indication that you raised those concerns at all before you were arrested.

5

It is also difficult for me to give much weight to your protestations that you acted in order to protect your children because your actions in this case showed a conscious and reckless disregard for their health and welfare. Not only did you remove them from their mother, but you took them in a motor home through Central America, thousands of miles from their family, friends, physicians, schoolmates, schools, teachers. This is particularly galling, I think, in light of your daughters' ages and the fact that one of them was a three year old child at that time with autism, who would have had a difficult time communicating her concerns even under the best of circumstances. I cannot fathom how you possibly could have thought that it would be in their best interests to take them thousands of miles away to live in a motor home in Nicaragua.

Before you committed these crimes, it appears by all accounts that you were, indeed, an upstanding, law-abiding citizen with a good job, who was respected in your profession and your community, and maintained a thriving practice in the area of optometry. While I take into account as a potentially positive indicator your prospects after sentence of your reintegration into society [], I also have to recognize that you had other options, Dr. Matusiewicz. You had other options. You had the ability to pay for a lawyer; a strong and supportive group of friends, and family, and colleagues; and a Family Court that once saw fit to award you at least joint custody of your children.

(D.I. 63 at SA-163, 164)

Given the court's consideration of counsel's argument and its stated reasons for giving

little weight to Matusiewicz's assertion that he abducted his children to protect them from

perceived sexual abuse, Matusiewicz cannot demonstrate a reasonable probability that his

sentence would have been lower but for counsel's failure to file formal motions detailing his

concerns.[1] In turn, given the court's statements regarding Matusiewicz's failure to pursue legal

methods for "protecting" his children, Matusiewicz cannot demonstrate a reasonable probability

that his sentence would have been different but for counsel's failure to submit additional

---

[1]To the extent Matusiewicz's contention should be liberally construed as asserting that counsel should have filed a motion for downward departure on the basis that he was a law abiding citizen who just committed an "isolated mistake" in the context of his otherwise upstanding life, it is unavailing. *See United States v. Howe*, 543 F.3d 128, 134-35 (3d Cir. 2008). This court observed first-hand Matusiewicz's allocution, determined that he was not genuinely remorseful, and concluded that this "mistake" did not constitute a mitigating factor. Therefore, Matusiewicz cannot demonstrate a reasonable probability that a downward departure would have been granted but for counsel's failure to file a motion for downward departure presenting the "law abiding citizen/isolated mistake" argument.

affidavits from Matusiewicz's mother and sister corroborating his belief that his children were at risk for abuse. For these reasons, the court will deny as meritless the first ineffective assistance allegation asserted in claim one.

### 2. No loss to WSFS

Next, Matusiewicz contends that counsel was ineffective for failing to move for a variance or downward departure based on the fact that the sentencing guidelines overstated the seriousness of the offense because the victim bank, WSFS, did not suffer any out-of-pocket loss. However, the record clearly shows that counsel repeatedly raised the bank loss issue as a basis for a more lenient sentence during the entire sentencing proceeding. For instance, in his objections to the PSR, counsel argued that "WSFS did not lose a single dollar because of Matusiewicz's actions and, in fact, using WSFS's own accounting, the Bank ended up pocketing $35,000 in interest and outright profit for themselves plus an additional $20,000 in legal fees for their attorneys." (D.I. 63 at SA-34) In his sentencing memorandum, counsel reiterated this argument, asserting that Matusiewicz's "sentence should reflect . . . that the Bank lost no money but instead made a $30,000 windfall profit . . ." *Id.* at SA-59. During the sentencing hearing, counsel argued that the guidelines range for the bank fraud conviction "ignores reality because there is no loss." *Id.* at SA-154. The Court acknowledged counsel's argument, stating

> the bank apparently has been made whole. Your lawyer vigorously argued that point. But that, as I have ruled, as you know already, it was not due to actions that you took on behalf of the bank either directly or indirectly, or actions that were taken on your behalf. On the contrary, you fled the country, with no apparent intention of every paying back the money that you fraudently obtained. And you, in addition, went to considerable lengths to make it difficult to trace the funds that you took. It was only because of the persistence and expenditure of significant resources by federal law enforcement that these funds were recovered.

7

(D.I. 63, at SA-161) And finally, on appeal, counsel challenged the PSR's loss calculations on the same basis. *See Matusiewicz*, 2010 WL 4741816, at *2.

This record demonstrate that the court's rejection of counsel's "no loss" argument was not due to any deficiency in counsel's advocacy skills but, rather, because Matusiewicz played no part in the repayment to WSFS. In other words, the fact that the court was not persuaded by defense counsel's argument and that it did not grant a variance does not demonstrate that counsel was ineffective.

Matusiewicz's contention that counsel should have formally moved for a downward departure on the basis that the guidelines overstated the loss is equally unavailing. Pursuant to Section 2B1.1, a downward departure is appropriate when the "offense level determined under [the] guideline substantially overstates the seriousness of the offense. " U.S.S.BG. § 2B1.1, commentary, Application Note 19(c). Given the court's explicit rejection of counsel's argument that the loss calculation overstated Matusiewicz's culpability to any degree, a formal motion for downward departure due to overstatement of the loss lacked a substantial likelihood of success. For this reason, the court concludes that Matusiewicz has failed to demonstrate a reasonable probability that the result of his sentencing proceeding would have been different but for counsel's failure to file a formal motion for downward departure.

### 3. WSFS facilitated the fraud claim

Matusiewicz's next contention is that counsel should have moved for a downward departure and variance because WSFS's notary unlawfully facilitated the equity loan to him and, "but for the acts of and omissions of bank officer Prsylak and the bank's notary, the loan could not have been." The sentencing transcript reveals that counsel raised the issue of the bank

8

officer's culpability in notarizing the loan without Ms. Belford's presence.  However,

considering that any lapse on the bank's part was overshadowed by Matusiewicz's active and

deliberate steps to mislead the bank officials about Ms. Belford's presence and signature, the

court cannot conclude that counsel's decision to not file a formal variance or downward

departure motion raising this argument amounted to ineffective assistance.

### 4.  Ms. Belford's alleged approval to refinance the home

Next, Matusiewicz contends that counsel should have argued that Matusiewicz was

relying on Ms. Belford's explicit and earlier approval to refinance the home when he forged her

signature on the loan documents, as demonstrated by her signature on the Family Court's

Stipulation and Order.  This argument is unavailing.

To begin, nothing in the record supports Matusiewicz's statement that Ms. Belford

explicitly authorized refinancing the home.  In fact, Ms. Belford signed an affidavit stating that

she would never have signed the loan documents because the home was in dispute as part of the

divorce proceedings.

Moreover, counsel did contend during sentencing that a Family Court order authorized

Matusiewicz to take ownership of the home and seek refinancing.  For instance, in his objections

to the PSR, counsel objected to the two-level enhancement for transfer of encumbered property,

arguing that the Delaware Family Court Stipulation and Order dated August 23, 2007 awarded

Matusiewicz sole ownership of the home and ordered Ms. Belford to execute and deliver a deed

conveying all her rights, title, and interest in the house to Matusiewicz.  (D.I. 63 at SA-038-39;

SA-44)  In making this objection, counsel argued that the Stipulation and Order authorized

9

Matusiewicz to obtain financing on the house. *Id*. at SA-38-39. The court overruled the

objecting, finding:

> the terms of the settlement called for [Matusiewicz] to obtain sole ownership of the
> property and use the proceeds from refinancing the property to pay Ms. Belford
> $100,000. In this case, of course, Dr. Matusiewicz did not wait until Ms. Belford
> transferred her deed to him to take out the loan, nor did he ever pay Ms. Belford the
> $100,000. Instead he forged her name on a loan document and absconded overseas or to
> another country with the full proceeds of the fraudulently obtained line of credit. This
> certainly constituted a violation of the judicial order. . .

*Id*. at SA-109.

Given the court's rejection of counsel's argument, Matusiewicz cannot demonstrate a

reasonable probability that the result of his sentencing proceeding would have been different if

counsel had raised the instant argument in a formal variance motion or a motion for downward

departure.

For all of these reasons, the court concludes that Matusiewicz's allegations that counsel

provided ineffective assistance during the sentencing proceeding lack merit.

### B. Claim Two: Counsel Provided Ineffective Assistance During Plea Process

In claim two, Matusiewicz asserts that counsel was ineffective for failing to advise him of

all the facts and law relevant to his decision to plead guilty and for failing to pursue a more

favorable plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).[3] This argument

does not warrant relief. First, Matusiewicz has failed to demonstrate that counsel's performance

during the plea negotiation stage fell below an objective standard of reasonableness, because he

fails to identify specific facts and laws counsel allegedly failed to advise him about. In addition,

---

[3]Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure provides that "the plea agreement
may specify . . . that a specific sentence or sentencing range is the appropriate disposition of the
case, or that a particular provision of the Sentencing Guidelines, or policy statement, or
sentencing factor does or does not apply" and that "such a recommendation or request binds the
court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C).

10

counsel's failure to pursue a plea under Rule 11(c)(1)(C) was not objectively unreasonable, because the government did not offer such a plea, and the fact that Rule 11(c)(1)(C) pleas are rarely put before this Court demonstrate that how unlikely it was that the government would even contemplate offering such a plea. Similarly, Matusiewicz's vague contention that counsel should have pursued a "more favorable plea" does not indicate deficient performance. Finally, the court finds great significance in the fact that Matusiewicz does not challenge the knowing, voluntary, and intelligent nature of his guilty plea, and when he was under oath during the plea colloquy, Matusiewicz stated that he was satisfied with counsel's performance. (D.I. 54 at 7) As such, Matusiewicz's vague and unsupported statements regarding counsel's performance during the plea process do not provide the court with a reason to doubt the veracity of Matusiwiecz's plea colloquy representations. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977)("[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings.").

In addition, Matusiewicz has failed to satisfy the prejudice prong of the *Strickland/Hill* standard. Although he asserts that counsel failed to negotiate a more favorable plea, he does not assert that he would not have pled guilty and would have proceeded to trial but for counsel's conduct. *See United States v. Jones*, 2014 WL 2587008, at *6 (E.D. Pa. June 10, 2014)(collecting cases). For all of these reasons, the court concludes that claim two is wholly speculative and does not warrant relief.

## C. Claim Three: Counsel Provided Ineffective Assistance by Failing to Suppress Evidence or Dismiss Indictment

Movant contends that counsel should have filed a motion to suppress evidence and a motion to dismiss the indictment. Matusiewicz, however, does not identify the evidence he

11

believes should have been suppressed, nor does he identify any grounds for dismissing the indictment. As such, the allegations in claim three do no satisfy either prong of the *Strickland* standard.

### D. Claim Four: Counsel's Conflict of Interest

Finally, Matusiewicz asserts that counsel represented him while operating under a conflict of interest, but fails to support his argument with any specific facts or evidence. Because his ambiguous assertion does not establish the existence of an actual conflict of interest that adversely affected counsel's performance, the court will deny claim four as unsupported and meritless. *See Mickens v. Taylor*, 535 U.S. 162 (2002); *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

## IV. MOTION FOR APPOINTMENT OF COUNSEL AND DISCOVERY

Incorporated within the body of Matusiewicz's § 2255 motion is a request that the court appoint counsel to represent him and to permit certain witnesses to be deposed. (D.I. 49 at 22-24) Matusiewicz also filed a separate "renewed motion for discovery" during the pendency of this proceeding, asking permission to depose his former defense counsel, Ms. Belford, and the two employees from WSFS. (D.I. 67)

For the reasons just discussed, the court has concluded that Matusiewicz's § 2255 motion lacks merit. Therefore, the court will deny his motions for the appointment of counsel and for discovery as moot.

## V. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that

12

the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d
542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule
8(a), 28 U.S.C. foll. § 2255. As previously discussed, the record conclusively demonstrates that
Matusiewicz is not entitled to relief under § 2255. Therefore, the court an evidentiary hearing is
not warranted.

## VI.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to
issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability
is appropriate only if the movant "has made a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable
jurists would find the district court's assessment of the constitutional claims debatable or
wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The court is denying Matusiewicz's § 2255 motion after determining that his ineffective
assistance of counsel claims lack merit. The court is persuaded that reasonable jurists would not
find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VII.   CONCLUSION

The court concludes that Matusiewicz is not entitled to relief pursuant to 28 U.S.C.
§ 2255. An appropriate order will issue.

13